IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JAY FELTON CHATMAN<br>TDCJ-CID NO. 0659216,<br>         Petitioner, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CAUSE NO. 6:18-CV-126 |
| LORIE DAVIS, Director,<br>Texas Department of Criminal<br>Justice, Correctional Institutions<br>Division,<br>         Respondent.[1] | §<br>§<br>§<br>§<br>§<br>§ | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

This case involves a federal habeas proceeding filed pursuant to 28 U.S.C. § 2254 by inmate Jay Felton Chatman (Chatman). Chatman was found guilty of possession of contraband in disciplinary case number 20180009586. However, since Chatman fails to show that he is entitled to federal habeas relief, the instant petition should be denied.

## JURISDICTION

Chatman seeks habeas corpus relief in this Court pursuant to 28 U.S.C. §2254, which provides the Court with jurisdiction over the subject matter and the parties as Chatman is incarcerated within this Court's jurisdiction.

---

[1] For clarity, Respondent will be referred to as "the Director."

## PETITIONER'S ALLEGATIONS[2]

The Director understands Chatman to allege that:

1. The evidence is insufficient to sustain his disciplinary conviction because he is actually innocent;

2. *The charge was retaliatory;*

3. His hearing records were deficient and/or fraudulent; and

4. *Substitute counsel was ineffective.*

Fed. Pet. at 6–7; Memo. at 1–3.

## GENERAL DENIAL

The Director denies all of Chatman's assertions of fact except those supported by the record or specifically admitted herein. In addition, the Director opposes any future, substantive motions filed by Chatman— including, without limitation, a motion to amend and/or supplement his petition, and a motion for an evidentiary hearing—and will respond to any such motions only upon order of the Court.

## STATEMENT OF THE CASE

The Director has lawful custody of Chatman pursuant to a judgment and sentence in the 78th District Court of Wichita County, Texas, in cause number 30,918-B, styled *The State of Texas v. Jay Felton Chatman.* Exhibit A at 1–2.

---

[2] The Director considers the claims that are italicized as not properly exhausted and, as such, procedurally defaulted.

2

Chatman was found guilty of three counts of the felony offenses of delivery of a controlled substance and one count delivery of a simulated controlled substance, and on December 7, 1993, Chatman was sentenced to forty years' incarceration to run concurrently. *Id.* Pursuant to the mandatory supervision statutes in effect when he committed the offenses, Chatman is eligible for release to mandatory supervision. *See* Tex. Code Crim. Proc. art. 42.18 (c) (West 1993). Because Chatman challenges the result of a disciplinary action rather than the validity of his convictions, a procedural history of any appeals or state writ applications is irrelevant. *See* Fed. Pet. at 2, 5.

On September 8, 2017, in disciplinary case number 20180009586, Chatman was charged that with the prison disciplinary offense possession of contraband, a level 2, code 16.0 offense in violation of the TDCJ-CID *Disciplinary Rules and Procedures for Offenders*.[3] DHR at 1, 4.[4] At approximately 10:19 on September 12, 2017, Chatman was officially notified of the charged offense, the hearing, the right to call witnesses, the right to present documentary evidence, the right to be represented by counsel

---

[3] TDCJ Disciplinary Rules and Procedures for Offenders, Attachment A (February 2015),http://www.tdcj.state.tx.us/documents/cid/Disciplinary_Rules_and_Procedures_for_Offenders_English.pdf (last visited June 1, 2018).

[4] The Disciplinary Hearing Record (DHR) packet contains documents relevant to disciplinary case no. 20180009586. The Disciplinary Grievance Record, Parts I and II (DGR-1 and DGR-2, respectively) contains documents relevant to the TDCJ-CID grievance records maintained for the disciplinary case, and have been numbered with page one as the page following the attesting affidavit for each packet.

3

substitute, and the right to call and question the charging officer at the hearing, to which he pled "not guilty." *Id.* at 1–2, 14–15.

On September 12, 2017, Chatman was found guilty of the charge based on the charging officer's testimony and documentary evidence presented, including the video. DHR at 1, 14–15. As a result of this disciplinary hearing, Chatman's punishment was assessed the loss of forty-five (45) days commissary and telephone (OTS) privileges, forty-five (45) days cell restriction, a reprimand, a reduction in line class from L1 to L2, and a loss of 30 days good-time credit. *Id.,* at 1–2.

On October 6, 2017, Chatman submitted his first step one grievance which was denied on October 25, 2017. DGR-1 at 1–2. On October 30, 2017, Chatman submitted a second step one grievance, which was returned to Chatman as redundant on November 1, 2017. *Id.,* at 3–4. On November 6, 2017 Chatman submitted a step two grievance, which was also denied on December 4, 2017. DGR-2 at 1–2. Chatman filed the instant petition on March 9, 2018. Fed. Pet. at 10.

## ADMINISTRATIVE RECORDS AND EXHIBITS

A copy of the records Chatman challenges and a copy of the CD audio recording of the disciplinary proceeding will be filed on June 14, 2018 as state records. A computer-generated printout of Chatman's commitment inquiry, as provided by TDCJ-CID, is attached and fully incorporated herein to the

4

Director's Answer as Exhibit A. Copies of the records will not be forwarded to Chatman. *See Sixta v. Thaler*, 615 F.3d 569, 573 (5th Cir. 2010) (Respondent is not required to serve Petitioner with a copy of the state court records.).

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

The Director believes that Chatman has not sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b)(1) regarding allegations two and four, stated above. The Director, however, reserves the right to raise the statute of limitations, the exhaustion and procedural default defenses, should petitioner or this Court disagree with the Director's construction of the claims presented, or should petitioner attempt to add new or additional claims and evidence. This federal petition is neither barred by limitations, 28 U.S.C. §2244(d), nor subject to the successive petition bar, 28 U.S.C. § 2244(b).

## ANSWER WITH BRIEF IN SUPPORT

I.    **Standard of Review.**

Because the instant petition was filed on March 8, 2018,[5] it is subject to review under the amendments to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Kiser v. Johnson*, 163 F.3d 326, 327 (5th Cir. 1999).

AEDPA provides that:

---

[5] *See Windland v. Quarterman*, 578 F.3d 314, 318 (5th Cir. 2009), *citing Spotville v. Cain*, 149 F.3d 374, 376–78 (5th Cir. 1998) (for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system). Therefore, the Director uses March 8, 2018, the date Petitioner declared under penalty of perjury that he placed his federal petition in the prison mail system. Fed. Pet. at 10.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2017).

A state court decision may be contrary to Supreme Court law in two ways: first, if the state court arrives at an opposite conclusion to the Supreme Court on a question of law. Second, if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite conclusion. *See Williams v. Booth*, 529 U.S. 362, 405 (2000) (citing *Green v. French*, 143 F.3d 865, 869–70 (4th Cir. 1998)). In determining whether a state court decision involves an "unreasonable application" of Supreme Court law, a federal habeas court's "inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. Under this clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411.

On review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by *clear and convincing evidence.*" 28 U.S.C. § 2254(e)(1) (emphasis added). A prison disciplinary hearing is a form of State court proceeding. *Bounds v. Thomas*, 430 U.S. 817, 821 (1977).

## II.   Chatman's Second and Fourth Claims Are Unexhausted and Procedurally Barred.

Under AEDPA, an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court may not be granted unless it appears:

> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>
>        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (West 2018).

A petitioner must exhaust a claim with the same facts and legal theory upon which the petitioner bases his current assertions. *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006). In order to satisfy the exhaustion requirement

relating to administrative remedies, state prisoners must first seek redress in the state forum before bringing a federal habeas corpus action. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). To satisfy the exhaustion requirement, the applicant must present his or her claims in a procedurally correct manner according to the rules of the administrative body. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In Texas, the exclusive administrative remedy that inmates must exhaust is the prison grievance system. Tex. Gov't Code Ann. § 501.008(a). As the Supreme Court explained:

> Since [the] internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems. Moreover, because most potential litigation involving state prisoners arises on a day-to-day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances.

*Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (holding that the requirement that a state prisoner exhaust available state remedies as to any of his or her federal claims prior to seeking federal habeas relief is grounded in principles of comity; in the federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights). Furthermore, the Fifth Circuit has held that it must "adhere to the view that in habeas corpus cases the exhaustion principle has as much relevance in areas of administrative

concern as it does where state judicial action is being attacked." *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978); *see also Baxter v. Estelle*, 614 F.2d 1030, 1031–32 (5th Cir. 1981) ("a federal court may not grant habeas corpus relief to a petitioner who has failed to exhaust all administrative remedies, including an appeal to the Director of Corrections").

In his Step 1 and Step 2 grievance forms, the only allegation he makes is that the evidence is insufficient because it was never proven that he was in possession of K-2, which corresponds roughly to the combination of his first and third claims in his federal petition. *Compare* Fed. Pet at 6–7, Memo. at 1–3 *with* DGR-1 at 1–4 *and* DGR-2 at 1. Chatman does not raise his second or fourth claims at all in his grievance forms. *See generally,* DGR-1 at 1–4; *see generally,* DGR-2 at 1. Thus, the Director considers Chatman's first and third claims exhausted. However, the Director believes that Chatman has not properly exhausted his administrative remedies with respect to his second and fourth claims because he did not present them in a procedurally correct manner through both steps of the grievance process. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted.").

Because Chatman failed to raise his claims in both steps of the grievance procedure, rendering them unexhausted, it would be futile for him to raise the claims in any subsequent state review as any newly filed grievances would be

9

untimely.[6] Furthermore, if he were to present his claims to the Texas Court of Criminal Appeals in a state writ, he would be denied relief because disciplinary actions are not cognizable on state habeas review. *See Ex parte Palomo,* 759 S.W.2d 671, 674 (Tex. Crim. App. 1988) (holding that the Texas Court of Criminal Appeals will not consider challenges to prison disciplinary actions in a state writ). The general rule, that a state court must explicitly apply a procedural bar to preclude federal review, does not apply when a petitioner fails to exhaust his state remedies. *See Coleman,* 501 U.S. at 735. In such cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*

Although federal habeas corpus review is available when administrative remedies either are unavailable or wholly inappropriate to the relief sought, Chatman's failure to properly exhaust his administrative remedies is due to neither "an absence of a state corrective process," nor to circumstances rendering that process "ineffective to protect the rights of the applicant." 28 U.S. § 2254(b)(1)(B)(I) and (ii). Exceptions to the exhaustion requirement for federal habeas corpus review apply only in extraordinary circumstances and Chatman bears the burden of showing the futility of an administrative review.

---

[6] TDCJ Offender Orientation Handbook, 74–75 (rev. February 2017), http://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last visited June 1, 2018) (establishing that offenders have fifteen days from the date of the incident to raise a Step 1 grievance and fifteen days from a denial of a Step 1 grievance to file a Step 2 grievance).

*Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Moreover, to overcome the procedural bar, a petitioner must demonstrate adequate cause for the default and actual prejudice resulting from such default. *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000).

Chatman does not argue, much less establish, any extraordinary circumstances nor futility of the administrative process. 28 U.S.C. § 2254(b); *Fuller*, 11 F.3d at 62. Accordingly, this Court should find Chatman's second and fourth claims to be unexhausted and procedurally barred. Alternatively, although relief may not be *granted* on unexhausted claims, such claims may be *denied* on the merits. 28 U.S.C. § 2254(b)(2); *Mercadel v. Cain*, 179 F.3d 271, 276–78 (5th Cir. 1999). Chatman's claims are also without merit, as examined in section II.

### III.   To the extent Chatman challenges his loss of privileges, he has failed to demonstrate a deprivation cognizable on federal habeas review.

As a result of disciplinary case number 20180009586, Chatman was assessed the punishment, in part, of forty-five (45) days' loss of commissary privileges, forty-five (45) days' cell restriction, and forty-five (45) days' loss of OTS privileges. DHR at 1–2.

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meacham v. Fano*,

427 U.S. 215, 224 (1976)). When a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Sandin*, 515 U.S. at 485; *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). However, prisoners do not lose all constitutional rights when they are incarcerated. *Wolff*, 418 U.S. at 555. In certain circumstances, states may create liberty interests which are protected by the Due Process Clause. *Sandin*, 515 U.S. at 483–84; *Madison*, 104 F.3d at 767. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). "[T]hese interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison*, 104 F.3d at 767.

Chatman's temporary loss of privileges and time-earning classification in terms of a line class will not "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487. The possibility that his time-earning classification would affect when Chatman is ultimately released from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id*. Chatman cannot show that the hearing officer's determination that his time-

12

earning classification to remain the same would automatically change the length of his sentence. *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997). It is well settled that the timing of Chatman's release is "too speculative to afford him a constitutionally cognizable claim to the 'right' to a particular time earning status." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).[7] Thus, with respect to petitioner's line class, Chatman fails to state a claim that entitles him to federal habeas corpus relief.[8]

A loss of good time credits when an inmate is eligible for release on mandatory supervision requires a different analysis because in Texas, good time is a factor used to determine a prisoner's eligibility for early release from prison. *See* Tex. Gov't. Code Ann. § 508.145 (2014). Since 1977, Texas law has provided that good conduct time credits "appl[y] only to eligibility for parole or mandatory supervision," rather than an actual reduction in an inmate's

---

[7] In *Malchi*, the court found that time earning status and custodial classifications are attenuated to release on parole and are "too speculative to afford . . . a constitutionally cognizable claim to the 'right' to a particular time earning status, which right the Texas legislature has specifically denied creating." 211 F.3d at 959. Moreover, "[t]he loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of . . . [petitioner's] custodial status . . . [and] such speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (internal citations omitted).

[8] A "section 1983 action is an appropriate remedy for recovering damages resulting from illegal administrative procedures." Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept., 37 F.3d 166, 168 (5th Cir. 1994); see Richardson v. Fleming, 651 F.2d 366 (5th Cir. 1981). "The core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement." Cook, 37 F.3d at 168 (citing Spina, 821 F.2d at 1128). Thus, Chatman's complaints are not claims which are cognizable in a habeas corpus action.

sentence. *See* Tex. Gov't. Code Ann. § 498.003 (2014). Thus, a potential challenge to the fact and duration of confinement arises when an inmate loses good time credit based on prison conduct violations, and he is eligible for release on mandatory supervision. Accordingly, Chatman's claims are properly considered a habeas corpus attack because he challenges a disciplinary hearing in which he lost 180 days of good time and is eligible for release on mandatory supervision. *Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994); *see Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). Nevertheless, a review of Chatman's disciplinary hearing records show that all due process requirements were completely met. *See* DHR; CD.

To the extent that Chatman challenges his loss of privileges, such punishment does not "represent the type of atypical, significant deprivation in which a state might create a liberty interest." *Madison*, 104 F.3d at 767–68; *see also Sandin*, 515 U.S. at 484. Rather, those penalties constitute a change in the conditions of petitioner's confinement and, therefore, do not implicate the protections afforded by the Due Process Clause. *Madison*, 104 F.3d at 768 (holding that thirty days each of commissary and cell restrictions do not implicate due process concerns). Therefore, with respect to his loss of privileges, Chatman has failed to state a claim that entitles him to federal habeas corpus relief.

14

## IV.   The evidence of Chatman's guilt is sufficient.

In his first and third claims, Chatman argues that he "was never legally charged with disciplinary infraction of possession of 5 grams of K-2…" Fed. Pet. at 6 (as original). He also alleges that the records supporting the hearing were deficient and/or fraudulent. Fed. Pet. at 7. Even though Chatman uses the phrase "actual innocence," the argument he advances in these allegations is that the evidence was insufficient, in part because the contraband was never tested by a laboratory.[9] Fed. Pet. at 6–7; Memo. at 1–3.

This argument is inapposite because Chatman was disciplined for possession of contraband under Disciplinary Rule 16.0 "possession of contraband" (a level-two offense), not under Rule 12.0 "use or possession of marijuana or an unauthorized controlled substance" (a level-one offense). DHR at 1. Furthermore, Chatman does not show that the evidence was insufficient. Thus, his claim is meritless and should be denied.

The Fifth Circuit has held that disciplinary determinations "will not be disturbed unless they are arbitrary and capricious." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Due process merely requires that there be "some," "any," or "a modicum of" evidence to support the findings made in a disciplinary hearing.

---

[9] Should Chatman contend otherwise, the Director reserves all defenses.

*Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001). "The goal . . . is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Id.*

The standard is "extremely deferential." *Morgan v. Dretke*, 433 F.3d 455, 458 (5th Cir. 2005). A single report or testifying witness is sufficient to support an adverse disciplinary decision. *Id.* Due to the needs of prison security and protection, even "anonymous and merely generalized accusations [can] form the sole basis for disciplinary action against a prison inmate." *Rabelais*, 659 F.2d at 545. In ascertaining whether the standard is satisfied, there is no need to examine the entire record, independently assess the credibility of witnesses, or weigh evidence. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). Disciplinary proceedings are only overturned "where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001).

At Chatman's hearing, the Disciplinary Hearings Officer (DHO) saw evidence including the statements of the Accusing Officer (AO), Chatman's statement, the gloves containing seven "lay-ins" belonging to Chatman, five small plastic bags containing an unknown substance believed to be K-2 (a synthetic cannabinoid), one packet of sweetener and another plastic bag containing another unknown substance. DHR at 2, 4, 6; Audio CD. The AO

16

stated that he observed Chatman and another offender barricaded in the scullery. *Id.* As he approached, he observed Chatman's glove on the ground, and found the contraband and other contents. *Id.* At the hearing, Chatman stated the items were not found on him, and that there were multiple people around at the time. DHR at 2, 5. He also denied that the items were contraband. DHR at 5, Audio CD.

Under TDCJ policy, possession includes having an item on the body of an offender, *among his belongings* or in his cell or immediate living area, no matter who owns the item.[10] Likewise, under TDCJ policy, contraband includes any item changed from its original condition if the change jeopardizes institutional safety or security, or any item which, in the judgment of TDCJ staff, unreasonably hinders the safe and effective operation of the unit.[11] Consequently, because the contraband was found in a glove among Chatman's belongings, it was in his possession. Likewise, even assuming *arguendo* that the substance was food seasoning or oregano (as Chatman alleged in his step one grievances), and from the commissary (as Chatman alleged in his step two grievance), the fact that it was changed from its original condition and

---

[10]  TDCJ Offender Orientation Handbook, page 21 (rev. February 2017), http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (visited June 1, 2018).

[11]  TDCJ Offender Orientation Handbook, page 21 (rev. February 2017), http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (visited June 1, 2018).

packaged to appear like a controlled substance, combined with the fact that
Chatman is presently confined for delivery of a simulated controlled substance,
would jeopardize institutional safety and security, and hinder the safe and
effective operation of the unit; thus it remains contraband, and a Rule 16
violation. Likewise, the hearing officer found, based on the evidence, that the
substance probably was K-2. This satisfies the "some evidence" standard, and
the claim should be denied.

## V.   There is no evidence of retaliation.

In his second ground, Chatman alleges that his "disciplinary case is a
grievance system of retaliation for airing grievances . . . ." Fed. Pet. at 6. He
seems to argue that his disciplinary case was in retaliation for using the
grievance procedure. Memo. at 3. However, the evidence in the record is
sufficient to uphold the finding of guilt, and furthermore Chatman provides no
support for his assertion of retaliation. Thus, it should be dismissed as
conclusory.

On federal habeas review, claims of retaliation regarding prison
disciplinary proceedings are approached with caution. The Fifth Circuit
explained:

> The prospect of endless claims of retaliation on the part of inmates
> would disrupt prison officials in the discharge of their most basic
> duties. Claims of retaliation must therefore be regarded with
> skepticism, lest federal courts embroil themselves in every
> disciplinary act that occurs in state penal institutions.

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40

F.3d 72, 74 (4th Cir. 1994). Likewise:

> To assure that prisoners do not inappropriately insulate
> themselves from disciplinary actions by drawing the shield of
> retaliation around them, trial courts must carefully scrutinize
> these claims. To state a claim of retaliation an inmate must allege
> the violation of a specific constitutional right and be prepared to
> establish that but for the retaliatory motive the complained of
> incident—such as the filing of disciplinary reports as in the case at
> bar—would not have occurred. This places a significant burden on
> the inmate. Mere conclusionary allegations of retaliation will not
> withstand a summary judgment challenge. The inmate must
> produce direct evidence of motivation or, the more probable
> scenario, "allege a chronology of events from which retaliation may
> plausibly be inferred." Although we decline to hold as a matter of
> law that legitimate prison disciplinary report is an absolute bar to
> a retaliation claim, the existence of same, properly viewed, is
> probative and potent summary judgment evidence, as would be
> evidence of the number, nature and disposition of prior retaliation
> complaints by the inmate.

*Id.* (footnotes and citations omitted).

Chatman presents nothing here other than an unsubstantiated

allegation of retaliation. *See* Fed. Pet. at 6; *see also* Memo. at 3. He does not

allege a retaliatory motive, nor has he alleged a "a chronology of events from

which retaliation may plausibly be inferred" as required by *Woods. See Woods,*

60 F.3d at 1166. Thus, his claim is not cognizable on federal habeas review.

*See Perillo v. Johnson,* 79 F.3d 441, 444 (5th Cir. 1996) (stating that conclusory

allegations unsupported by specifics, or contentions that in the face of the

record are wholly incredible will not entitle one to discovery or a hearing

(internal quotation and citation omitted)); *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996); *see also Ross v. Estelle*, 694 F.2d at 1011. Thus, his claim must be denied.

## VI.   Chatman's claim of ineffective assistance of counsel substitute is not cognizable on federal habeas.

In his fourth claim, Chatman alleges that his Counsel Substitute (CS) showed "deliberate indifference to advocating on behalf of the offender." Fed. Pet. at 7. However, this claim must be denied as it is not cognizable on federal habeas review.

The Fifth Circuit explained, "[a]s a prison inmate does not have a right to either appointed or retained counsel at prison disciplinary hearings, there is no constitutional violation on which habeas relief could be granted on the basis of ineffective assistance of counsel substitute at a disciplinary hearing." *Choice v. Cockrell,* 51 Fed. Appx. 483 at *1 (5th Cir. 2002) (unpublished) (citing *Enriquez v. Mitchell*, 533 F.2d 275, 276 (5th Cir. 1976)); *see also Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (when no right to counsel exists, one cannot be deprived of the effective assistance of counsel).

Because Chatman had no constitutional right to counsel substitute, he cannot claim a right to ineffective assistance. Additionally, since no such right has been established, this Court is prohibited from creating and applying new rules retroactively in a habeas proceeding such as this one. *Teague v. Lane,*

489 U.S. 288 (1989). Therefore, this claim does not and cannot provide a basis for federal habeas relief and should be denied.

## CONCLUSION

For the above reasons, the Director respectfully requests that Chatman's petition for writ of habeas corpus be denied with prejudice and this Court deny a certificate of appealability.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Charles Arnone
CHARLES ARNONE*
Assistant Attorney General
State Bar No. 24066933

*Attorney in Charge

Office of the Attorney General
Criminal Appeals Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1600
Facsimile: (512) 936-1280
email: Charles.Arnone@oag.texas.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served by placing same in the United States Mail, postage prepaid, on June 14, 2018 addressed to:

Jay Felton Chatman
TDCJ #659216
Mark W. Michaels Unit
2664 FM 2054
Tennessee Colony, TX 75886

/s/ Charles Arnone
CHARLES ARNONE
Assistant Attorney General

22